UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER EDWARD CHMURA,   Civil Action No. 11-13244

    Plaintiff,

                                HON. John Corbett O'Meara
                                U.S. District Judge
v.                                HON. R. STEVEN WHALEN
                                U.S. Magistrate Judge

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Christopher Edward Chmura brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment [Doc. #11] be GRANTED and Plaintiff's motion [Doc. #10] DENIED.

## PROCEDURAL HISTORY

On May 5, 2008, Plaintiff Christopher Edward Chmura ("Plaintiff") filed applications for SSI and DIB, alleging disability as of July 20, 2007 (Tr. 99-100, 101-102). After the initial denial of the claim, he requested an administrative hearing, held on April 8, 2010 in

Detroit, Michigan before Administrative Law Judge ("ALJ") Oksana Xenos (Tr. 27). Plaintiff, represented by attorney Robert Samoray, testified (Tr.31-41), as did Vocational Expert ("VE") Jennifer Turecki (Tr. 41-43). On June 10, 2010, ALJ Xenos found that Plaintiff was not disabled (Tr. 20). On May 23, 2011, the Appeals Council denied review (Tr. 1-6). Plaintiff filed for judicial review of the Commissioner's decision on July 26, 2011.

## BACKGROUND FACTS

Plaintiff, born December 13, 1971, was 40 when the ALJ issued her decision (Tr. 20, 99). He graduated from high school and worked previously as a painter and construction worker (Tr.155, 161). His application for benefits alleges disability as a result of dyslexia and a back condition (Tr. 154).

### A.    Plaintiff's Testimony

Plaintiff testified that he was left-handed, stood 5' 11," and weighed 210 pounds (Tr. 31). He stated that he currently lived in a house with his wife (Tr. 32). He reported that his disability was precipitated by a herniated disk creating right leg numbness (Tr. 32). He indicated that after being unable to continue his former work as a painter, he applied for other work, but never received a response (Tr. 33).

Plaintiff alleged that he was currently unable to perform any work, noting that his condition had worsened since July, 2007 (Tr. 43). He stated that he now experienced numbness in both legs and had been prescribed a cane (Tr. 34). He estimated that he could walk "around 400 feet" without the cane (Tr. 34). He reported that he continued to drive, but experienced ongoing leg and back pain (Tr. 35). He testified that dampness and cold weather

exacerbated his pain (Tr. 35) but medication and reclining took "the edge off" his discomfort (Tr. 35). He reported "light" side effects from his medication (Tr. 35). He stated that physical therapy had not improved his condition (Tr. 35).

Plaintiff testified that he had undergone two back surgeries, reporting that following each surgery, he experienced improvement for about a year (Tr. 36). He stated that he had last seen his back surgeon one month before the hearing (Tr. 37). Plaintiff reported that he experienced difficulty tying his shoes and other activities requiring him to bend over (Tr. 37). Plaintiff testified that he spent most of his time watching television (Tr. 38). He stated that he rarely left the house other than to attend doctors' appointments (Tr. 38). He noted that he continued to play the guitar, but added that back problems prevented him from playing an entire song (Tr. 38). He denied hand or arm problems (Tr. 39).

In response to questioning by his attorney, Plaintiff stated that he did not graduate from high school until the age of 21 due to reading comprehension problems (Tr. 40). He alleged that his back pain obliged him to recline for two-hour stretches multiple times each day (Tr. 41).

### B. Medical Evidence

#### 1. Treating Sources

While still in school in July, 1985, Plaintiff was diagnosed with dyslexia (Tr. 389). In January, 2004, Plaintiff reported back spasms after slipping on ice (Tr. 232). Daniel Welt, M.D. prescribed Tylenol 3 (Tr. 231). The same month, an MRI of the lumbar spine revealed a disc herniation at L4-5 (Tr. 230). Dr. Welt's June, 2006 treating notes state that Plaintiff

experienced continued hip and leg pain (Tr. 226). In February, 2004, Plaintiff requested a work release limiting him to light work duty (Tr. 229).

In September, 2004, surgery for L5-L1 disc herniation was performed without complications (Tr. 247-248). In August, 2006, Plaintiff sought urgent care for back pain (Tr. 348-349). The same month, an MRI of the lumbar spine showed "moderately extensive scar formation" at L5-S1 and "a small annular tear" at L4-5 (Tr. 22).

The following month, Plaintiff underwent a "redo" of the 2004 surgery (Tr. 239, 243). Following surgery, Plaintiff reported right foot numbness but was able to ambulate well (Tr. 244). Ahmad Zakeri, M.D. noted that Plaintiff was able to return to work as a painter within weeks after surgery but limited his work activity to "non-strenuous" tasks (Tr. 343). Dr. Zakeri's April, 2007 treating notes state that Plaintiff, laid off the same month, had experienced intermittent back pain but had been able to perform light work duty (Tr. 345). The same month, an MRI of the lumbar spine again showed a tear at L4-5 and scar formation at L5-S1 (Tr. 223). In June, 2007 Lesly Pompy, M.D., a pain management specialist, observed that Plaintiff experienced problems sitting (Tr. 305-306). The same month, Plaintiff reported continued symptoms but that his condition was improving (Tr. 346). Treating notes by Dr. Pompy state that Plaintiff was well motivated with a good memory and coping skills (Tr. 315). Plaintiff was administered epidural injections the same month (Tr. 372). A July, 2007 EMG of the lower extremities was suggestive of L4-L5 radiculopathy (Tr. 333-336, 364-365). In September, 2007, Dr. Pompy, remarking that Plaintiff experienced anxiety, referred him for mental health treatment (Tr. 280). Plaintiff again

underwent epidural injections (Tr. 374).

October, 2007 occupational therapy intake notes state that Plaintiff was independent in self care activities and could drive short distances but relied on his wife for all other household chores (Tr. 375). Plaintiff was deemed able to lift up to 10 pounds (Tr. 378, 384). Pain questionnaire results state that Plaintiff minimized pain in some categories, provided average results in some, and exaggerated symptomology in others (Tr. 387).

Dr. Pompy's November, 2007 treating notes state that Plaintiff continued to experience weakness, numbness, and shooting pain (Tr. 272). Dr. Pompy opined that Plaintiff was not malingering (Tr. 315). In March, 2008, Plaintiff reported that he was functioning at a "three" on a scale of one to ten (Tr. 260). In June, 2008, Dr. Pompy observed a "slow, limping gait" (Tr. 498). In July, 2008, Plaintiff reported that his pain had returned one month after steroid injections, describing his level of functioning as a "two" on a scale of one to ten (Tr. 488). In October, 2008, Dr. Pompy noted that Plaintiff walked with a slow gait and required the use of a cane (Tr. 468). In January, 2009, Dr. Pompy found no evidence of malingering (Tr. 459). In February, 2009, Dr. Pompy characterized Plaintiff condition as "[f]ailed laminectomy syndrome with epidural fibrosis" (Tr. 451). A March, 2009 MRI of the lumbar spine showed that the condition remained stable with a mild disc bulge at L4-5 (Tr. 391). A June, 2009 MRI showed similar results (Tr. 428).

Also in June, 2009, James A. Weiss, M.D. observed "[n]o difficulties in motor strength, gait, sensation, level of consciousness, memory, concentration, mood, affect or general thought processes" (Tr. 424). However, treating notes by Dr. Welt from the same

month indicate that Plaintiff required the use of a cane (Tr. 432). In July, 2009, Dr. Weiss administered epidural injections (Tr. 418). In September, 2009, Dr. Weiss again administered epidural injections (Tr. 410). November, 2009 treating notes by Nadeem N. Moghal, M.D. state that Plaintiff was overusing Percocet (Tr. 402). In January, 2010, Plaintiff reported that his condition was worsening (Tr. 398). In February, 2010, Dr. Welt noted that Plaintiff exhibited some discomfort but demonstrated normal muscle tone (Tr. 395-396). He was fully oriented with an appropriate mood and affect (Tr. 396)

### 2. Non-Treating Sources

In June, 2008, psychologist Harold Stephen Bilotta, Jr., examined Plaintiff on behalf of the SSA (Tr. 210-216). Plaintiff reported that he had been diagnosed with ADHD but had not taken medicine for the condition since childhood (Tr. 210). He denied depression, but stated that he was "frustrated and angry" that he was unable to work due to physical problems (Tr. 211). He reported smoking two packs of cigarettes a day but denied alcohol use (Tr. 211). He noted that he stayed in touch with childhood friends and attended church (Tr. 212). He stated that he had difficulty playing the guitar due to back pain (Tr. 212). He reported that he was independent in self-care skills (Tr. 213). Bilotta assigned Plaintiff a GAF of 50[1] (Tr. 215).

The following month, Daniel Blake, Ph.D. performed a Psychiatric Review Technique

---

[1] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR*) (4th ed.2000).

of Plaintiff's treating and consultive records, noting the diagnoses of ADHD and an adjustment disorder (Tr. 178, 180). Under the "'B' Criteria," Dr. Blake found mild restrictions in daily living and social functioning but moderate difficulties in maintaining concentration, persistence, or pace (Tr. 187). Dr. Blake noted that despite a diagnosis of dyslexia, Plaintiff attended church, drove alone, and attended musical concerts (Tr. 189). Dr. Blake also completed a Mental Residual Functional Capacity Assessment, finding that Plaintiff experienced moderate limitations in understanding, remembering, and carrying out detailed instructions (Tr. 199). Plaintiff was also deemed to have moderate limitations in maintaining attention for extended periods, sustaining an ordinary routine without special supervision, and completing a normal workweek without experiencing with psychologically based interruptions (Tr. 200). Dr. Blake found that Plaintiff was moderately limited in the ability to set realistic goals or make independent plans (Tr. 200). Apart from the above findings, Dr. Blake found that Plaintiff did not experience significant workplace limitations (Tr. 199-200). Noting a "significant work history," Dr. Blake concluded that Plaintiff was capable of sustained work activity (Tr. 201).

Also in July, 2008, Richard C. Gause, M.D. performed a consultive physical examination, observing that Plaintiff was "well-developed" and "well-nourished" with normal concentrational abilities (Tr. 206). Plaintiff did not experience difficulty getting on or off the examination table and exhibited a normal range of motion except in the dorsal lumbar spine (Tr. 206). Dr. Gause found 5/5 motor strength and the absence of muscle atrophy (Tr. 206). He noted that Plaintiff walked with a slight limp and required the use of

-7-

a cane (Tr. 206-207).

The same month, a non-examining Physical Residual Functional Capacity Assessment by Tariq Mahmood, M.D. determined that Plaintiff could lift 20 pounds occasionally and 10 frequently; stand, sit, or walk for six hours in an eight-hour workday; and push and pull without limitation in all extremities (Tr. 192). Dr. Mahmood found that Plaintiff was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling, but did not possess manipulative, visual, communicative, or environmental limitations (Tr. 194-195).

### C. Vocational Expert Testimony

The ALJ posed the following question to VE Jennifer Turecki, taking into account Plaintiff's age, education and work experience:

> [A]n individual . . . who is able to perform work at the light level but is limited to unskilled routine work with only one to two-step instructions given orally; work that involves minimal change in work routine; can occasionally climb, balance, stoop, kneel, crouch and crawl; cannot operate foot or leg control; and should avoid extreme temperatures as well as wet and humid conditions. What jobs are available to an individual with that residual functional capacity and a given profile? (Tr. 42).

The VE replied that given the above limitations, the individual could perform the unskilled, exertionally light work of a hand packer (600 positions in the regional economy), sorter (4,000), and inspector (3,000)[2] (Tr. 42). The VE stated that all of the above jobs allowed for

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and

a sit-stand option (Tr. 42). The VE found further that if Plaintiff were additionally restricted to lifting only 10 pounds or less, he could perform the sedentary, unskilled work of an assembler (3,000), surveillance monitor (1,500), and plastic sorter (1,300). The VE found that if "due to frequent episodes of pain and combination of other impairments," Plaintiff was unable to "sit, stand or walk a total of eight hours, five days a week on a regular and continuing basis" all competitive employment would be precluded (Tr. 43). She concluded by stating that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 43).

### D. The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found that Plaintiff experienced the "severe" impairments of "spine disorder; hypertension; arthritis; adjustment disorder; and learning disorder" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for sedentary work with the following limitations:

> [U]nskilled, routine work with one to two step instructions given orally; minimal changes in work routine; he can lift up to 10 pounds; he can occasionally climb, balance, stoop, kneel, crouch, and crawl; he requires a sit/stand option; he cannot operate foot/leg controls; and he should avoid temperature extremes and wet and humid conditions (Tr. 16).

---

that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

Citing the VE's job numbers, the ALJ determined that while Plaintiff was unable to perform any of his past relevant work, he could work as a bench assembler, surveillance systems monitor, and plastics sorter (Tr. 19-20).

The ALJ discounted Plaintiff's allegations of disability (Tr. 16-18). She noted that since the alleged July, 2007 onset of disability, Plaintiff had actively sought employment (Tr. 17-18). She cited October, 2007 occupational therapy records indicating that Plaintiff could perform sedentary work (Tr. 18). She noted that Plaintiff continued to play the guitar regularly (Tr. 18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health*

*& Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The Hypothetical Question

Plaintiff argues first that the hypothetical question did not fully account for his

-11-

moderate deficiencies in concentration, persistence, and pace ("CPP"). *Plaintiff's Brief,* 8-10, *Docket #10.* He points out that while the ALJ adopted Dr. Blake's finding of moderate concentrational deficiencies, the limitations posed to the VE did not reflect that degree of impairment. *Id.* (citing Tr. 35). He contends that the VE's job testimony, given in response to an inadequate question, does not constitute substantial evidence. *Id.* (citing *Edwards v. Barnhart,* 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005)(Friedman, J.)).

Plaintiff is correct that a hypothetical question constitutes substantial evidence only if it accounts for a claimant's full degree of work-related impairment. *Varley v. Secretary of HHS,* 820 F. 2d 777, 779 (6th Cir. 1987). However, while "[t]he hypothetical question ... should include an accurate portrayal of [a claimant's] individual physical and mental impairments," it need not list all of a claimant's maladies verbatim. *Webb v. Commissioner of Social Sec.*, 368 F.3d 629, 632 (6th Cir.2004)(citing *Varley,* 820 F.2d at 779 (6th Cir. 1987)); *See also Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001).

Moderate deficiencies in CPP suggest substantial limitations which must be acknowledged in the hypothetical question. *Edwards, supra,* 383 F.Supp.2d at 931. The failure to account for moderate deficiencies in concentration, persistence and pace in the hypothetical question constitutes reversible error. "[U]nskilled work," or "simple work" may be insufficient to account for moderate deficiencies in CPP. *Id.*; *See also Ealy v. Commissioner,* 594 F.3d 504 (6th Cir. 2010). However, an ALJ is not required to include the phrase "moderate deficiencies in concentration, persistence, or pace" or other talismatic language in the hypothetical. *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001); *Webb,*

*supra,* 368 F.3d at 633.

In the present case, the ALJ's choice of hypothetical limitations sufficiently addressed Plaintiff's concentrational limitations as found in the record. The ALJ found that Plaintiff experienced moderate deficiencies in CPP (Tr. 15). In her hypothetical question to the VE, she referenced the limitations by restricting him to "unskilled routine work with only one to two-step instructions given orally" and "minimal change in work routine" (Tr. 42).

*Edwards,* (oft-cited with approval by the undersigned) is inapplicable to the present case for multiple reasons. First, in contrast to *Edwards,* ALJ Xeno's hypothetical question did not merely limit Plaintiff to "simple, routine, unskilled work," but also restricted him to "one to two-step instructions given orally" and "minimal change in the work routine" (Tr. 42). Second, *Edwards* does not state that the terms "simple, routine, unskilled work" are *always* insufficient to describe such limitations. Rather, the court found that these terms "[w]hile close," did not "fully convey" Edward's concentrational problems. *Id,* at 930; *See also See Sutherlin v. Commissioner of Social Sec.,* 2011 WL 500212, *3 (E.D.Mich. 2011)(evidence of record did not require more than a hypothetical limitation of one to two step tasks despite a finding of moderate deficiencies in CPP); *Ealy,* 594 F.3d at 516.

In contrast to *Edwards* in which claimant had received long-term mental health treatment and was observed to have been "decompensating" on a least one occasion, present Plaintiff has not received long-term mental health care as an adult.[3]  *Id.* at 929. Treating and

---

[3] Even assuming that he could argue that he in fact requires mental health care but is

consultive sources state that he exhibited good memory skills and denied depression (Tr. 210, 213-214, 315). Although Plaintiff noted a history of ADHD and alleged that he was still "hyper," he did not claim that the condition had interfered with his former work as a painter or construction worker (Tr. 210). Plaintiff's diagnosis and limitations as a result of dyslexia were adequately addressed by the hypothetical question's requirement that Plaintiff receive only verbal instructions (Tr. 42).

Plaintiff's additional contention that the hypothetical question ought also to have included a preclusion on "quota" or assembly-line type work is somewhat undermined by the fact that he admits that he applied for "assembly line" jobs following the onset of disability (Tr. 34). Further, assuming that he was unable to perform any quota driven work, only two of the three jobs, assembler and plastic sorter, contain such requirements (Tr. 42-43). While moderate deficiencies in "pace" could in some instances affect the ability to perform the production jobs of assembler and plastic sorter, the surveillance monitor position does not contain a pacing requirement. The present record does not contain any evidence to support the contention that Plaintiff lacked the concentrational abilities to work as a surveillance monitor. Even if the assembler and sorter jobs were omitted from the findings, the 1,500 existing security monitor positions in the regional economy constitute a "substantial" number. *Born v. Sec'y of H.H.S.,* 923 F.2d 1168, 1174 (6th Cir.1990)(citing *Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir.1988)). While I do not agree with Plaintiff's argument that the

---

unable to afford it, the record otherwise supports the conclusion that he could perform work within the parameters of the ALJ's hypothetical limitations.

hypothetical question ought to have included a pacing restriction, the omission would amount to harmless error at worst.

### B. The ALJ's Credibility Determination

Plaintiff also disputes the finding that his allegations of disability were not credible. *Plaintiff's Brief* at 10-13. He argues that the ALJ's credibility determination relied on mischaracterizations of his testimony and the medical record. *Id.* Specifically, he objects to the ALJ's reliance on his attempts to procure work after filing for disability, his ability to walk 400 feet, his continued guitar playing, and his daily activities. *Id.* at 12-13. Plaintiff also asserts that the ALJ did not articulate the weight she assigned to various treating and consultive sources. *Id.* at 12-13.

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir.1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment ... that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Second, SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record." C.F.R. § 404.1529(c)(3) lists the factors to be considered in making a credibility determination, including daily activities, "precipitating and aggravating factors," treatment

-15-

received for relief of symptoms, and additional considerations relevant to functional limitations. 20 C.F.R. § 404.1529(c)(3).

First, Plaintiff faults the ALJ relying on his admission that he applied for factory jobs following the alleged onset of disability. *Plaintiff's Brief* at 11 (citing Tr. 17, 34). However, the ALJ was entitled to note that Plaintiff's applications for employment stood at odds with his allegations of disability. *Bowden v. Commissioner Social Sec.,* 1999 WL 98378, *7 (6th Cir.1999)(the claimant "offers no reasonable explanation of how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that she is ready and willing to work").[4]

Second, the ALJ's observation that Plaintiff was capable of walking up to 400 feet does not amount to a mis-statement or distortion of the record. Plaintiff contends that the clinical observation that he could walk up to 400 feet does not support the conclusion that he could do so on a sustained basis. *Plaintiff's Brief* at 11. This argument is a bit of a red herring. The ALJ did not find that Plaintiff could walk 400 feet on a sustained basis. Rather, in making her credibility determination, she noted that the fact that he could walk up to 400

---

[4] I recognize that applying for a job is not perfectly analogous to stating on an unemployment application that one is "ready and willing to work." For example, a claimant could apply for and receive a job that proves to be too demanding to accommodate that person's limitations, and this would qualify as an "unsuccessful work attempt" that could not be used to deny a disability claim, at least to the extent that it would not be considered substantial gainful employment. Nevertheless, a claimant's application for a particular job can at least be considered, along with other evidence, in assessing the *credibility* of his claim that he is exertionally incapable of performing that job.

feet stood at odds with his claim that his back condition prevented him from performing all work (Tr. 16-17). The RFC limiting Plaintiff to sedentary work (occasional walking only) with a sit/stand option and a preclusion on the use of foot or leg controls reflects his walking limitations as found in the record. 20 C.F.R. § 404.1567(a). Practically speaking, Plaintiff has not demonstrated how the assembler, plastic sorter, and security monitor positions would require him to walk 400 feet in an entire workday, much less on a sustained basis.

In support of Plaintiff's argument, I agree that the finding that he "spends his days watching television and playing his guitar" overstates his testimony that back problems prevented Plaintiff him finishing even one song (Tr. 17, 38). However, the finding is not inconsistent with the report of Plaintiff's mother stating that he spent his time playing the guitar, watching television, and visiting with friends (Tr. 133). Plaintiff's contention that the ALJ erroneously applied a "total disability" standard in determining the claim is unavailing. He bases this argument on a sentence fragment taken from the administrative opinion which states in full: "The undersigned finding that the claimant's activities are not consistent with an individual who is totally disabled, *in accordance with Social Security Regulations*" (Tr. 18)(emphasis added). Because the ALJ applied the correct law in finding that Plaintiff was not disabled, this argument is without merit. Likewise, the ALJ was entitled to observe that Plaintiff's admitted activities stood at odds with his claim of disability (Tr. 18).

Finally, Plaintiff cites *Hurst v. Secretary of HHS,* 753 F. 2d 517 (6th Cir. 1985) in support of his argument that the ALJ did not articulate the relative weight assigned to various

-17-

treating and non-treating sources. *Plaintiff's Brief* at 12-13. *Hurst,* which involved the ALJ's failure to discuss key evidence by a treating source is distinguishable from the present case. First, unlike *Hurst,* ALJ Xenos did not overlook treating source material but to the contrary, cited treating notes and imaging studies in support of the finding that Plaintiff was capable of only sedentary work (Tr. 17-18). In making the sedentary finding, the ALJ explicity discounted Dr. Mahmood's July, 2008 finding that Plaintiff could perform *light* work in favor of treating source evidence showing that he was limited to *sedentary work* (Tr. 19, 192). While Plaintiff appears to argue that the ALJ did not place enough weight on treating source findings, he does not cite any treating source material suggesting a greater level of limitation than that found in the RFC. The ALJ's basis for her mental impairment findings are similarly well explained. She stated that she gave "great weight" to Dr. Blake's non-examining findings (Tr. 18). Given the dearth of mental health treating records, the ALJ's reliance on Dr. Blake's findings in crafting the mental RFC was appropriate.

My recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's limitations, and it is of no import that I might find differently if this were *de novo* review. However, because the ALJ's decision was well articulated and within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary

judgment [Doc. #11] be GRANTED and Plaintiff's motion [Doc. #10] DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: August 28, 2012

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on August 28, 2012.

Johnetta M. Curry-Williams<br>
Case Manager